**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 22-cv-60805-RAR

**PEPSICO, INC.,**

   **Petitioner,**

**v.**

**VITAL PHARMACEUTICALS, INC., d/b/a
BANG ENERGY**

   **Respondent.**

<u>**VITAL PHARMACEUTICALS, INC.'S MOTION TO VACATE AND INCORPORATED
MEMORANDUM OF LAW**</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

PROCEDURAL HISTORY.................................................................................. 1

    I.       The Panel bifurcates the arbitral proceedings. ....................................... 2

    II.     The Panel defers resolution on three liability issues; VPX appeals...................... 3

    III.    PepsiCo's nominated arbitrator is disqualified. .................................... 4

    IV.   VPX seeks additional relief related to the disqualification, including a
            pending petition before another court. ..................................................... 5

GOVERNING LAW.............................................................................................. 7

ARGUMENT ......................................................................................................... 7

I.     PepsiCo Cannot confirm an award that the panel has construed as not final. .................. 8

    A.     The Final Partial Award fails to fully resolve the issues submitted to the
            Panel, requiring vacatur. ..................................................................... 8

II.    This Court should vacate the Final Partial Award because one of the arbitrators
       was disqualified for partiality or lack of independence. ................................. 10

    A.     Courts vacate awards when there is partiality.................................... 10

    B.     The Disqualified Arbitrator was found to lack independence or to be
            partial. ................................................................................................ 13

III. This court should vacate the Final Partial Award because the panel imposed its own
       brand of industrial justice................................................................................ 16

    A.     The Panel imperfectly executed its powers in granting PepsiCo relief that
            PepsiCo's CEO had publicly acknowledged was not available......................... 17

    B.     The Panel refused to execute its power to determine that PepsiCo had not
            met its burden of proving that MIXX could be a ████████████ .................. 18

    C.     The Panel dispensed its own brand of justice by refusing to require mutual
            specific performance, if it was going to order specific performance at all.......... 19

CONCLUSION.................................................................................................... 20

CERTIFICATE OF SERVICE ........................................................................... 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Int'l Specialty Lines Ins. Co. v. Allied Capital Corp.*,
  35 N.Y.3d 64 (Ct. App. N.Y. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*City Sch. Dist. of Oswego v. Oswego Classroom Tchrs. Ass'n*,
  100 A.D.2d 13, 473 N.Y.S.2d 284 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Clinchfield Coal Co. v. Dist. 28, United Mine Workers*,
  720 F.2d 1365 (4th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Collegiate Licensing Co. v. Am. Co. of Reading, Pa.*,
  713 F.3d 71 (11th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Colony Liquor Distrib. Inc. v. Local 669, Int'l Bhd. Of Teamsters*,
  34 A.D.2d 1060, 312 N.Y.S.2d 403 (3d Dep't 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Commonwealth Coatings Corp. v. Cont'l Cas. Co.*,
  393 U.S. 145 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12, 15

*County of Nassau v. Chase*,
  402 Fed. Appx. 540 (2nd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*FIA Card Servs., N.A. v. Morgan*,
  25 Misc. 3d 1229(A), 906 N.Y.S.2d 772 (Dist. Ct. 2009) . . . . . . . . . . . . . . . . . . . .10, 14

*Fromer Foods, Inc. v. Edelstein Foods, Inc.*,
  14 Misc. 2d 1048, 181 N.Y.S.2d 352 (Sup. Ct. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Garcia v. Church of Scientology Flag Serv. Org., Inc.*,
  2021 WL 5074465 (11th Cir. Nov. 2, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*George A. Hormel & Co. v. United Food & Commercial Workers, Local 9*,
  879 F.2d 347 (8th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Hamilton Partners v. Singer*,
  290 A.D.2d 316 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Major League Baseball Players Ass'n v. Garvey*,
  532 U.S. 504, (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Marine Products Exp. Corp. v. M.T. Globe Galaxy*,
  977 F.2d 66 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 17

*Meisels v. Uhr*,
  79 N.Y.2d 526 593 N.E.2d 1359 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds*,
  748 F.2d 79 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Morgan Guar. Tr. Co. of New York v. Solow Bldg. Co., LLC*,
  279 A.D.2d 431, 720 N.Y.S.2d 69 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nemer Jeep–Eagle, Inc. v. Jeep-Eagle Sales Corp.*,
  992 F.2d 430 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Pac. Motor Trucking Co. v. Auto. Machinists Union*,
  702 F.2d 176 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Pemex-Refinacion v. Tbilisi Shipping Co. Ltd., 04 CIV. 02705 (HB),
  2004 WL 1944450 (S.D.N.Y. Aug. 31, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Publicis Commc'n v. True N. Commc'ns, Inc.*,
  206 F.3d 725 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Quash Seltzer, LLC v. PepsiCo, Inc.*,
  2021 WL 1963639 (S.D. Fla. May 17, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Rosenberg v. Schwartz*,
  2019 NY Slip Op 07587, 176 A.D.3d 1069 110 N.Y.S.3d 119 (App. Div. 2nd Dept.) . . . . . . 8

*Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*,
  668 F.3d 60 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Smith Barney, Harris Upham & Co. v. Luckie*,
  85 N.Y.2d 193, 647 N.E.2d 1308 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Sun Ref. & Mktg. Co. v. Statheros Shipping Corp. of Monrovia, Liberia*,
  761 F. Supp. 293 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Supreme Int'l Corp. v. Anheuser-Busch, Inc.*,
  972 F. Supp. 604 (S.D. Fla. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Three S Del., Inc. v. Dataquick Info. Sys., Inc.*,
  492 F.3d 520 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Tinaway v. Merrill Lynch & Co.*,
  658 F. Supp. 576 (S.D.N.Y. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Trade & Transp., Inc. v. Nat. Petroleum Charterers Inc.*,
  931 F.2d 191 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Vital Pharms. v. PepsiCo, Inc.*,
  528 F. Supp. 3d 1304, 2020 WL 7625226 (S.D. Fla. 2020) . . . . . . . . . . . . . . . . . . . Passim

*Wiregrass Metal Trades Counsel AFO-CIO v. Shaw Environmental & Infrastructure, Inc.*,
  837 F.3d 1083 (11th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## **Statutes**

9 U.S.C. § 5, and (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9 U.S.C. § 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

9 U.S.C. § 10(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13

9 U.S.C. § 10(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

**Rules**

CPLR § 7511(b)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CPLR 7511 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CPLR 7511(b)(1)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13

CPLR 7511(b)(1)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CPLR 7511, subds. (b), (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Other Authorities**

4 Commercial Arbitration § 128:5 (Jan. 2022 update) . . . . . . . . . . . . . . . . . . . . . . . . 9

Respondent, Vital Pharmaceuticals, Inc. ("VPX"), pursuant to 9 U.S.C. § 10, hereby files this Motion to Vacate and Incorporated Memorandum of Law, seeking entry of an Order vacating an award issued in an underlying arbitration (the "Final Partial Award") and directing the parties to begin the arbitral proceedings anew.

## INTRODUCTION

PepsiCo seeks to confirm an arbitration award that is not final and without any reference to the fact that one of the three members of the panel who signed the award was disqualified for partiality and lack of independence. Additionally, this Court should not confirm a non-final award and instead should vacate the award. Moreover, because of the extraordinary circumstances underlying the disqualification of one of the three panel members, this Court should order a new panel be appointed and this dispute to be arbitrated anew.

## PROCEDURAL HISTORY

Having presided over a previous confirmation proceeding related to an interim award entered in the parties' underlying arbitration, the Court is aware of the nature and background of the parties' underlying dispute. *See, e.g.*, *Vital Pharms. v. PepsiCo, Inc.*, No. 20-cv-62415-RAR (S.D. Fla.), Dkts. 1, 6, and 35. VPX now provides the following summary of facts directly relevant to PepsiCo's motion to confirm (and VPX's instant motion to vacate) a subsequent final partial award issued by the arbitral panel (the "Panel").

On November 23, 2020, PepsiCo initiated arbitral proceedings against VPX. Thereafter, an Emergency Arbitrator granted, in part, PepsiCo's request for interim relief and issued the interim award (the "Interim Award"). This Court subsequently confirmed the Interim Award on December 21, 2020. *See Vital Pharms. v. PepsiCo, Inc.*, 528 F. Supp. 3d 1304, 1308, 2020 WL 7625226 (S.D. Fla. 2020).

1

████████████████████████████████████████████████████

████████████████████████████████████████████████ Even

though two of the three arbitrators were party-appointed, all of the arbitrators were required to

meet the AAA standards with respect to impartiality and independence because the Parties had not

specifically agreed otherwise. Declaration of Zachary Foster ("Foster Decl."), at ¶ 5, Exs. 2 & 3.

## I.     The Panel bifurcates the arbitral proceedings.

After confirmation of the Interim Award, the Panel assumed jurisdiction and issued several

procedural orders structuring the arbitration. To facilitate a speedy resolution of the "most time

sensitive issues," VPX proposed bifurcating the arbitration to first resolve three issues, one of

which was whether PepsiCo had the right to distribute Quash's MIXX hard seltzer product.[1] *Id.* at

¶ 7, Ex. 4.  For its part, PepsiCo requested that the Panel bifurcate between liability and damages.

*Id.* at ¶ 8, Ex. 5.

The Panel bifurcated the arbitral proceedings, rejecting VPX's proposal and largely

(though not completely) adopting PepsiCo's proposal. *Id.* at ¶ 9, Ex. 6. Under the Panel's order,

Phase 1 would result in a "final partial award" that would determine liability issues. *Id.* Phase 2

was designed to result in a "final award" that would resolve the damages, if any, flowing from the

Phase 1 final partial award. *Id.* Relevant here, the Panel held that Phase 1 "will result" in a "final

partial award" that would resolve the following:

- "Whether the Bang Mixx hard seltzer product is a ███████████████ under the Distribution Agreement";

- "Whether VPX has materially breached the Distribution Agreement by . . . ████████████████

---

[1] VPX also reserved its objections to the Panel determining the issue at all because Quash Seltzer, LLC ("Quash") never agreed to arbitrate with PepsiCo. *Quash Seltzer, LLC v. PepsiCo, Inc.,* Case No. 21-CV-60191-RAR, 2021 WL 1963639, at *4 (S.D. Fla. May 17, 2021). However, Quash's action was stayed by this Court, and VPX (while reserving its objections) was compelled to arbitrate PepsiCo's new claims relating to Quash's hard seltzer product. *Id.* at *8.

██████████████████████████ as alleged in [PepsiCo's] Amended Demand . . ."; and

- "Whether VPX has tortuously [sic] interfered with PepsiCo's contacts and business relationships with third parties . . . ."

(collectively, the "Unresolved Claims"). *Id.*

In July 2021, the Parties conducted an 8-day Phase 1 hearing on all of the Phase 1 issues. *Id.* at ¶ 10. Both Parties presented significant evidence, including 17 witnesses and more than 2,000 exhibits. *Id.* The record is replete with voluminous evidence presented on the Unresolved Claims. *Id.* For example, the Parties supplied opposing live expert testimony that elucidated the complexities attendant to nationwide alcohol distribution, licensing, and regulation, which related only to the MIXX claim. *Id.* In defense of PepsiCo's disparagement claim, VPX's founder and CEO, Jack Owoc, testified on behalf of VPX. *Id.*

## II.     The Panel defers resolution on three liability issues; VPX appeals.

Subsequently, the Panel issued an award (the "Final Partial Award") in favor of PepsiCo. *See* Dkt. 1-1. While styled as "Final," the Panel failed to decide the Unresolved Claims, despite previously ordering that they would be resolved in the Phase 1 award. Foster Decl. Ex. 6. The Panel, *sua sponte*, carried the Unresolved Claims over to Phase 2. *See* Dkt. 1-1, at 45, 68–69, 72. PepsiCo had the burden of proof on the Unresolved Claims, but the Panel did not explain why it gave PepsiCo a second chance to meet its burden of proof, rather than dismissing the Unresolved Claims outright. *See id.*

The Panel's *sua sponte* conduct involved not only failing to act, but also awarding unrequested relief: it ordered VPX to transition distribution of one of its larger customers, Texas-based H-E-B grocery stores, to PepsiCo *within 30 days* of the Final Partial Award. *Id.* at 65. PepsiCo had *not* requested a transition of H-E-B on a 30-day timeline and the Panel did not cite a

3

contractual provision requiring a 30-day transition of H-E-B. VPX appealed the Final Partial Award, pursuant to the AAA's optional appellate rules. Foster Decl. ¶ 12.

### III.    PepsiCo's nominated arbitrator is disqualified.

On January 25, 2022, PepsiCo's nominated arbitrator belatedly revealed an ongoing professional relationship with PepsiCo's counsel's firm and specifically PepsiCo's lead counsel in the arbitration (the "Disqualifying Relationship"). *Id.* at ¶ 13, Ex. 7. VPX has never received fulsome details about the Disqualifying Relationship and why disclosure thereof was withheld for weeks. *Id.*

On March 1, 2022 (and pursuant to VPX's motion), the AAA disqualified PepsiCo's arbitrator for "partiality or lack of independence." *Id.* at ¶¶ 15-16, Ex. 9 & 10 at 1. The AAA made no finding as to when the partiality or lack of independence arose and did not allow further inquiry into the issue. *Id.* The sparse information available to VPX suggested that the Disqualifying Relationship existed by at least the beginning of December 2021. *Id.* at ¶ 14, Ex. 8. During that time, PepsiCo vigorously lobbied the Panel to proceed with Phase 2, notwithstanding that VPX had appealed the Final Partial Award to an appellate arbitral panel ███████████████

Over VPX's objection and during the pendency of its arbitral appeal, the Panel proceeded with Phase 2. *See id.* at ¶ 17. In total, the Panel issued five orders between December 12, 2021, and February 8, 2022, setting pre-trial matters and a June 2022 Phase 2 hearing date. *Id.* The AAA did not address the fact that every decision issued by the Panel related to Phase 2 occurred while the Disqualifying Relationship existed but was concealed from VPX. At present, VPX and PepsiCo are following the deadlines set by these very orders.[2] *Id.*

---

[2] VPX has been proceeding while fully reserving its objections.

IV.   **VPX seeks additional relief related to the disqualification, including a pending petition before another court.**

VPX sought additional relief from the AAA related to the consequential effects of the disqualification, including a restart of the entire arbitral proceeding. *Id.* at ¶ 18, Ex. 11. That request was premised on (1) the fact that both the Agreement itself and the AAA Commercial Rules ███████████████████ are silent on how a disqualified arbitrator should be replaced, (2) the fact no decision was made as to the scope of the impact of the disqualified arbitrator's "partiality or lack of independence," and (3) how the open liability issues that the Panel failed to address, as well as the pending appeal, translated to a lack of a final award. *Id.*

However, the AAA declined to issue further relief. Instead, the AAA asserted that following the disqualification, PepsiCo was entitled to select a replacement arbitrator. *Id.* at ¶ 19, Ex. 12.  The AAA did not cite any applicable AAA rule or Agreement provision authorizing PepsiCo to appoint a replacement arbitrator after its original arbitrator had been disqualified. *Id.*

The AAA's *ad hoc* replacement process spawned a litany of procedural irregularities, each visited with the AAA. *Id.* at ¶ 20, Ex. 13. The AAA declined to order further relief or provide any explanation supporting its post-disqualification process. *Id.* To address these concerning developments, VPX filed a petition seeking to appoint a new arbitrator on April 11, 2022, which is currently pending in the United States District Court for the District of Arizona. *See generally Vital Pharms., Inc. v. PepsiCo, Inc.*, No. 2:22-cv-591-PHX-DLR (D. Ariz.) (the "Arizona Action"). The parties are presently briefing VPX's related motion, which seeks entry of an order (1) appointing a new arbitrator pursuant to 9 U.S.C. § 5, and (2) directing the arbitral proceedings to begin anew. That motion will be fully briefed by May 16, 2022. Aware of the current Phase 2 deadlines, that court has indicated that it intends to resolve VPX's motion prior to the June 2022

hearing. *See id.* at Dkt. 21. The court in the Arizona Action is also aware of PepsiCo's later-filed petition to confirm in this Action. *Id.* at Dkt. 24, 9.

As that Arizona Action is the first-filed action, this Court should defer resolution on PepsiCo's petition for confirmation and VPX's instant motion to vacate until the court in the Arizona Action has resolved VPX's motion seeking judicial appointment of a substitute arbitrator. *Supreme Int'l Corp. v. Anheuser-Busch, Inc.*, 972 F. Supp. 604, 607 (S.D. Fla. 1997) (noting that the "'first-filed' court[] is the more appropriate forum in which to determine whether the first-filed case should proceed, or whether it should give way for reasons of judicial economy to" a later filed action). The relief sought in the Arizona Action directly implicates many of the issues bound up in the proceedings before this Court. *Collegiate Licensing Co. v. Am. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013) ("[w]here two actions involved overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."). For example, VPX's petition and motion in the Arizona Action assert that the Final Partial Award is non-final and that the court must direct the parties to begin the arbitration anew, consistent with its position herein. However, PepsiCo's later-filed petition to confirm the Final Partial Award runs directly counter to this relief: it seeks to convert the Final Partial Award into a judgment of the Court. Permitting resolution of the Arizona Action first is the sole means of avoiding potentially conflicting judgments. *Id.* at 606 ("The primary purposes of the [first-filed] rule are to conserve judicial resources and avoid conflicting rulings.").

On April 26, during the pendency of briefing on VPX's motion in the Arizona Action, the appellate tribunal issued its ruling, adopting the Final Partial Award. Knowing that these same issues were already before the Court in the District of Arizona, PepsiCo brought this action.

**GOVERNING LAW**

When considering whether to confirm or vacate, this Court can look to both New York law and the Federal Arbitration Act (the "FAA"). *County of Nassau v. Chase*, 402 Fed. Appx. 540, 541-42 (2nd Cir. 2010) (finding that New York law "accords" with the FAA.) Here, the Parties agreed that ████████████████████████████████████████████ ████████████████████████████████████████████ Agreement§ 9.11(a). Because the Parties agreed that ████████ is governed by New York law and ████████ includes confirmation and vacatur proceedings, applying New York law reflects the Parties' agreement. *See Smith Barney, Harris Upham & Co. v. Luckie*, 85 N.Y.2d 193, 202, 647 N.E.2d 1308, 1313 (1995) (applying New York state arbitration law when the choice-of-law clause "was subject to the parties' additional qualification that New York State law provides the basis of decision for questions concerning not only the agreement, but more critically, its ***enforcement***.") (emphasis added).

As the Federal Arbitration Act is modeled after the New York arbitration act, both align on vacatur of an arbitral award. *Smith Barney*, 85 N.Y.2d at 205–06 ("Significantly, the FAA was modeled after New York's arbitration law."). Thus, both New York law and the FAA are relevant to the Court's analysis.

**ARGUMENT**

This Court should vacate, not confirm, the Final Partial Award. As a preliminary matter, despite its title, the Final Partial Award is not substantively final and therefore not subject to confirmation. Moreover, the Final Partial Award must be vacated for evident partiality because the AAA found that one of the members of the panel was partial or lacked independence during a time when the panel retained jurisdiction over all the issues addressed in the Final Partial Award. Further, the Panel exercised its own form of industrial justice in deciding the Final Partial Award.

Finally, this Court must vacate the Final Partial Award and require the appointment of a new panel in order to remedy the evident partiality here.

## I. PEPSICO CANNOT CONFIRM AN AWARD THAT THE PANEL HAS CONSTRUED AS NOT FINAL.

### A. The Final Partial Award fails to fully resolve the issues submitted to the Panel, requiring vacatur.

The Court is now presented with the inverse of the prior confirmation proceeding: instead of reviewing an award styled as "Interim" that fully resolved the issues presented to the Emergency Arbitrator (*see generally Vital Pharms.*, 528 F. Supp. 3d at 1308), PepsiCo seeks to confirm an award styled as "final" that indisputably fails to resolve all issues submitted to the arbitrators. Under this scenario, governing law is clear: vacatur is required where an arbitral panel "exceeded [its] power or so imperfectly executed it that a ***final and definite award*** upon the subject matter submitted was not made." C.P.L.R. § 7511(b)(iii) (emphasis added); *accord* 9 U.S.C. § 10(a)(4) (authorizing vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, ***final, and definite award*** upon the subject matter submitted was not made.") (emphasis added).

Courts do not confirm arbitral awards that are not sufficiently final. Specifically, courts have "long recognized that final awards are those that are coextensive with the issues submitted to the arbitrators by the parties." *Am. Int'l Specialty Lines Ins. Co. v. Allied Capital Corp.,* 35 N.Y.3d 64, 72 (Ct. App. N.Y. 2020). Conversely, an arbitral award is non-final if it "does not resolve the controversy submitted or if it creates a new controversy." *Meisels v. Uhr,* 79 N.Y.2d 526, 593 N.E.2d 1359 (1992). Such awards are "deficient" and "subject to vacatur." *Id.*; *see also Matter of Rosenberg v. Schwartz,* 2019 NY Slip Op 07587, 176 A.D.3d 1069, 110 N.Y.S.3d 119 (App. Div. 2nd Dept.) ("An arbitration award will be vacated as indefinite or nonfinal for purposes of CPLR

7511 if it does not 'dispose of a particular issue raised by the parties.'") (quoting *Hamilton Partners v. Singer*, 290 A.D.2d 316, 736 (2002)).

In determining finality, courts credit substance over form: "[t]he *content* of a bifurcated arbitral decision, not its *nomenclature*, determines finality." *See* Thomas H. Oehmke, 4 Commercial Arbitration § 128:5 (Jan. 2022 update) (emphasis added). This Court's rulings are in accord: "[c]ourts go beyond a document's heading and delve into its substance and impact to determine whether the decision is final." *Vital Pharms.*, 528 F. Supp. 3d at 1308 (*citing Publicis Commc'n v. True N. Commc'ns, Inc.*, 206 F.3d 725, 729 (7th Cir. 2000)).

Despite its title, the Final Partial Award is not final—and therefore cannot be confirmed. The Panel adopted a bifurcated framework that expressly delineated the issues that would be resolved in a Phase 1 "final partial award." Foster Decl. at ¶ 9, Ex. 6. These issues included the Unresolved Claims. *Id.* Notwithstanding the voluminous record developed to resolve them, the Panel did not resolve the Unresolved Claims, but instead deferred them to Phase 2. *See generally* Dkt. 1-1. This *sua sponte* decision not only granted PepsiCo another opportunity to meet its burden on these claims, but also rendered the Final Partial Award indeterminate and non-final.

Indeed, the Panel *itself* has construed the Final Partial Award as non-final. Weeks after issuing the Final Partial Award and over VPX's objection, the Panel proceeded with Phase 2, unequivocally asserting "that it continues to have jurisdiction over *all issues* in this arbitration." Foster Decl., ¶ 23, Ex. 16, Order 18 (emphasis added). Just last month, the Panel emphasized that "at this time, only a Final *Partial* Award has been issued" and that "[t]his arbitration is proceeding in order to resolve several remaining issues . . . " *Id.* at Order 24, p. 7 (emphasis in original).

Confirming the Final Partial Award would subvert the purpose of confirmation, which is to provide an enforcement mechanism of a *final* award to the prevailing party. The Court

9

previously recognized this principle, finding that the Interim Award issued in the underlying arbitration was sufficiently final because it resolved the issues presented to the emergency arbitrator—namely, "the issue of whether the parties are required to maintain the status quo and continue to perform their contractual obligations during the pendency of the arbitration." *Vital Pharms.*, 528 F. Supp. 3d at 1309. Unlike the Interim Award, the Final Partial Award did not resolve all issues presented to the Panel for determination in Phase 1; by its express terms, it held open resolution of the Unresolved Claims. Nor is there any reasonable dispute that confirming the Final Partial Award would collide with the Panel's assertion that it maintains jurisdiction over all issues in the arbitration.

## II.   THIS COURT SHOULD VACATE THE FINAL PARTIAL AWARD BECAUSE ONE OF THE ARBITRATORS WAS DISQUALIFIED FOR PARTIALITY OR LACK OF INDEPENDENCE.

### A.   Courts vacate awards when there is partiality.

New York federal and state courts permit vacatur of an arbitration award due to partiality of an arbitrator. *FIA Card Servs., N.A. v. Morgan*, 25 Misc. 3d 1229(A), 906 N.Y.S.2d 772 (Dist. Ct. 2009) ("The partiality of the arbitrator is a grounds for vacating an arbitration award under the Federal Arbitration Act, 9 U.S.C. § 10(a)(2), and CPLR 7511(b)(1)(ii).").

Specifically, courts will vacate an arbitral proceeding under 9 U.S.C. § 10(a)(2) "where there was evident partiality or corruption in the arbitrators, or either of them." Courts find evident partiality "where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984); *see, e.g.*, *Sun Ref. & Mktg. Co. v. Statheros Shipping Corp. of Monrovia, Liberia*, 761 F. Supp. 293, 301 (S.D.N.Y.), *aff'd sub nom. Sun Ref. v. Statheros Shipping*, 948 F.2d 1277 (2d Cir. 1991) ("After examining the totality of the circumstances, I find that a reasonable person would have to conclude that Proeller was partial to

10

Statheros in that he was partial against Sun. I therefore vacate the award."); *Tinaway v. Merrill Lynch & Co.*, 658 F. Supp. 576, 579 (S.D.N.Y. 1987) (vacating award due to evident partiality under 9 U.S.C. § 10(a)(2)); *Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 18-13452, 2021 WL 5074465, at *11–12 (11th Cir. Nov. 2, 2021). To determine evident partiality, courts review the following four factors:

1. the extent and character of the interest, pecuniary, or otherwise, of the arbitrator in the proceedings;

2. the directness of the relationship between the arbitrator and the party the arbitrator is alleged to favor;

3. the connection of that relationship to the arbitrator; and

4. the proximity in time between the arbitrator's relationship with a party and the arbitration proceeding.

*See Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 74 (2d Cir. 2012); *see also Three S Del., Inc. v. Dataquick Info. Sys., Inc.*, 492 F.3d 520, 530 (4th Cir. 2007). Notably, the AAA's test for determining arbitrator partiality is substantially the same. Specifically, the AAA looks to whether the arbitrator's conflict is: 1) Direct; 2) Continuing; 3) Substantial; and 4) Recent. *See* Foster Decl. ¶ 15, Ex. 9 at 5.

Further, courts are required to be hypervigilant in safeguarding the impartiality and fundamental fairness of arbitration because arbitrators (unlike judges) maintain complete freedom to decide the law and facts of a dispute, subject to very limited appeal. *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145 (1968). In *Commonwealth Coatings Corp.*, the Supreme Court vacated an award due to evident partiality because of an undisclosed business relationship between the arbitrator and one of the parties. *Id.* It reasoned that the rules of arbitration and canons of judicial ethics, which require disclosure of known conflicts, "rest on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias." *Id.* at 150. The Court further explained that it was not "the

11

purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another." *Id.* Thus, in vacating the award, the Court also instructed other courts to "be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review." *Id.* at 149.

Similarly, CPLR § 7511(b)(1)(ii) requires a court to vacate an arbitral award where a neutral arbitrator is partial. "Partiality" is demonstrated by "actual bias or the appearance of bias from which a conflict of interest may be inferred." *City Sch. Dist. of Oswego v. Oswego Classroom Tchrs. Ass'n*, 100 A.D.2d 13, 17, 473 N.Y.S.2d 284, 287, *amended*, 101 A.D.2d 1027, 476 N.Y.S.2d 491 (1984) (holding that arbitrator was partial within the meaning of CPLR 7511(b)(1)(ii) and vacating arbitral award due to arbitrator's appearance of bias); *Colony Liquor Distrib. Inc. v. Local 669, Int'l Bhd. Of Teamsters*, 34 A.D.2d 1060, 312 N.Y.S.2d 403 (3d Dep't 1970), *aff'd*, 28 N.Y.2d 596, 268 N.E.2d 645, 319 N.Y.S.2d 849 (1971) (disqualifying arbitrator for partiality and vacating arbitral award under CPLR 7511(b)(1)(ii) because the arbitrator's previous association with a party was enough to provide "a reasonable inference of his partiality.").

Moreover, like federal courts, New York state courts require fundamental fairness in arbitration proceedings. For example, in *Colony Liquor Distrib. Inc*, the court disqualified an appointed arbitrator because he failed to disclose his recent employment by two union locals belonging to the same international union as one of the parties. 34 A.D.2d at 1060. In doing so, the court pointed out that "actual bias" was not claimed, but that the arbitrator's previous association was enough to provide "a reasonable inference of his partiality," effectively disqualifying him. *Id*. The court also noted that "[w]hen parties submit their differences to arbitration, it is essential by the very nature of the proceeding that the arbitrator be absolutely fair

and impartial [because he] is clothed with a very broad authority in the interpretation of agreements [and court] review of an arbitrator's award is a most limited one (CPLR 7511, subds. (b), (c))." *Id.* Thus, in addition to disqualifying the arbitrator for partiality, the court reversed the lower court's confirmation of the arbitral award and granted the appellant's motion to vacate the award to ensure fundamental fairness and impartiality in the arbitral proceedings. *See also*, *Morgan Guar. Tr. Co. of New York v. Solow Bldg. Co., LLC*, 279 A.D.2d 431, 720 N.Y.S.2d 69, 69 (2001) (affirming vacatur of arbitration award due to partiality and noting that "it is imperative that the integrity of the process, as opposed to the correctness of the individual decision, be zealously safeguarded").

**B.    The Disqualified Arbitrator was found to lack independence or to be partial.**

Here, the award should be vacated under both 9 U.S.C. § 10(a)(2) and CPLR 7511(b)(1)(ii) because it was issued by a panel containing a partial arbitrator—despite the parties' agreement to arbitrate before a neutral forum. The Court need look no further than the AAA's decision to disqualify PepsiCo's neutral arbitrator (the "Disqualified Arbitrator") for "partiality or lack of independence." Foster Decl. at ¶ 16, Ex. 10.

And the facts underlying the disqualification leave no room for dispute. During the underlying proceedings, and at a time when the Panel believed it retained jurisdiction on all issues, and while the Final Partial Award was subject to review by an appellate arbitral panel, one of the Panel members supplemented their disclosure (the "Supplemental Disclosure"). *Id.* at ¶ 13, Ex. 7. While brief, the Supplemental Disclosure indicated that the Disqualified Arbitrator and Andrew Tulumello, lead counsel for PepsiCo in the arbitration, recently interacted in an ongoing sports investigation. *Id.* The Disqualified Arbitrator had been appointed to chair an Oversight Committee, where "the investigative work is to be done by Covington & Burling in partnership with Weil, Gotshal," and that "Mr. Tulumello . . . is heading the Weil investigative team." *Id.* The

13

Supplemental Disclosure generated more questions than answers. VPX requested additional information regarding the extent and nature of the relationship between the Disqualified Arbitrator and PepsiCo's counsel, including a list of follow up questions. *Id.* at ¶ 14, Ex. 8 at 2.

The Disqualified Arbitrator answered, "I DON'T KNOW" to five of the eleven questions, and failed to explain any of the answers, making it impossible to assess the depth of the conflict or construct a timeline for it. *Id.* at 1. What was clear, was that the Disqualified Arbitrator was aware that Weil, Gotshal was involved in the investigation long before providing the Supplemental Disclosure. *Id.* Further investigation uncovered a press release issued by Weil just days after the Panel issued the Final Partial Award, announcing Weil's role in the investigation. *Id.* at Ex. 9 at 8.

The Disqualified Arbitrator did not know whether "Mr. Tulumello or anyone at Weil, Gotshal ha[d] a role in [her] appointment to the Oversight Committee." PepsiCo's counsel later admitted that the Disqualified Arbitrator was "jointly-selected" by Mr. Tulumello's client in the investigation and another party.  *Id.* at Ex. 8. However, PepsiCo's counsel never explained any details surrounding how the Disqualified Arbitrator was "jointly-selected" to be on the Oversight Committee or when the related discussions occurred. *Id.* Thus, there is no way to construct a complete timeline for the conflict nor is VPX aware of the extent of the connections between the Disqualified Arbitrator, Weil Gotshal, and partner Andrew Tulumello.

Regardless, weeks after the Supplemental Disclosure and months after the conduct on which it was based began, and without making further findings on the timeline for or nature of the conflict, the AAA disqualified PepsiCo's neutral arbitrator in accordance with its four-factor test for finding "partiality or lack of independence." *Id.* at ¶ 16, Ex. 10 at 1. However, the AAA did not seek additional information as to when the disqualifying conduct began. *Id.* Nor did it offer

any relief flowing from the disqualification in order to address the impact of the disqualifying conduct. *Id.*

Because there is undisputable evidence of arbitrator partiality, the Final Partial Award must be vacated. As the Supreme Court has instructed, courts must ensure that arbitrators avoid even the appearance of bias. *Commonwealth Coatings Corp.,* 393 U.S. at 150. While the above facts are plainly grounds for an independent finding of evident partiality, the AAA's decision to disqualify the Disqualified Arbitrator is more than sufficient to require vacatur of this award.

Moreover, this Court must require a new panel be appointed and the dispute begin anew. Appointing a new arbitrator does not address the partiality and lack of independence prior to the new arbitrator's appointment. Nor does it remedy the fact that two of the three arbitrators spent months working with a partial arbitrator and, during that time, heard evidence and reached conclusions as to that evidence. The only remedy here is a restart with a new panel. *Trade & Transp., Inc. v. Nat. Petroleum Charterers Inc.*, 931 F.2d 191, 194 (2d Cir. 1991) ("where one member of a three-person arbitration panel dies before the rendering of an award and the arbitration agreement does not anticipate that circumstance, the arbitration must commence anew with a full panel"); *see also Marine Products Exp. Corp. v. M.T. Globe Galaxy*, 977 F.2d 66, 68 (2d Cir. 1992); *Pemex-Refinacion v. Tbilisi Shipping Co. Ltd.*, 04 CIV. 02705 (HB), 2004 WL 1944450, at *5 (S.D.N.Y. Aug. 31, 2004) (same); *Fromer Foods, Inc. v. Edelstein Foods, Inc.*, 14 Misc. 2d 1048, 1049, 181 N.Y.S.2d 352, 353 (Sup. Ct. 1958) ("The deceased arbitrator cannot be deemed to be a mere dissenter, for through his efforts during the deliberations he may be able to persuade one or both surviving arbitrators to come to a different result."). Where, as here, an arbitrator was removed not by death but due to evident partiality, this general rule is even more appropriate.

### III. THIS COURT SHOULD VACATE THE FINAL PARTIAL AWARD BECAUSE THE PANEL IMPOSED ITS OWN BRAND OF INDUSTRIAL JUSTICE.

Black-letter law establishes that, "[w]here, as here, the arbitrator fails to discuss critical contract terminology, which terminology might reasonably require an opposite result, the award cannot be considered to draw its essence from the contract." *Clinchfield Coal Co. v. Dist. 28, United Mine Workers*, 720 F.2d 1365, 1369 (4th Cir. 1983); *George A. Hormel & Co. v. United Food & Commercial Workers, Local 9*, 879 F.2d 347, 351 (8th Cir. 1989) ("where an arbitrator fails to discuss a probative contract term, and at the same time offers no clear basis for how he construed the contract to reach his decision without such consideration, there arises a strong possibility that the award was not based on the contract"). "Although an arbitrator has great freedom in determining an award, he may not 'dispense his own brand of industrial justice'" by "disregard[ing] a specific contract provision." *Pac. Motor Trucking Co. v. Auto. Machinists Union*, 702 F.2d 176 (9th Cir. 1983) (internal citations omitted). Decisions of the Supreme Court and every circuit confirm that "[t]he arbitrator may not ignore the plain language of the contract."

Despite a limited review, courts vacate awards when an arbitration panel, "strays from interpretation and application of the agreement and effectively dispenses [its] own brand of industrial justice." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, (2001) (citation and punctuation omitted). *See also* 9 U.S.C. § 10(a)(4); CPLR 7511(b)(1)(iii).

Even a cursory review of the Final Partial Award demonstrates that it must be vacated. The Panel dispensed its own brand of justice in at least three discrete ways. First, the Panel ordered VPX to transition distribution to H-E-B within 30 days, even though PepsiCo had not requested this relief and after PepsiCo's own CEO had stated no additional transitions would happen. *See* Dkt. 1-1, p. 65. Second, the Panel concluded that PepsiCo had not met its burden of proving MIXX hard seltzer ("MIXX") was a ███████████ but refused to decide the issue, instead giving

PepsiCo a second chance to meet its burden and, in the process, rendering the Final Partial Award not final. *Id.* at 45. Third, the Panel required only one party to specifically perform, instead of both parties. *Id.* at 68.

### A.     The Panel imperfectly executed its powers in granting PepsiCo relief that PepsiCo's CEO had publicly acknowledged was not available.

In November of 2020, PepsiCo's CEO, Kirk Tanner, sent a public letter to its customers stating that because VPX had terminated the Agreement, PepsiCo "does not expect" "existing third-party Bang distributors . . .to transition to PepsiCo moving forward for the remainder of the agreement term. As such, certain of your store locations may continue to be serviced by existing VPX distributors." Foster Decl., ¶ 21, Ex. 14 at R-755. Mr. Tanner's statement aligned with the parties' agreements, none of which required continued transition of customers after the notice of termination.

Similarly, nothing in either the Agreement or the Channel Transition Agreement required VPX to transition any customer, at any point, within 30 days. While courts presume that arbitrators rest their award on an interpretation of the agreement, rather than a modification of it, that presumption is not absolute. *Wiregrass Metal Trades Counsel AFO-CIO v. Shaw Environmental & Infrastructure, Inc.*, 837 F.3d 1083, 1092 (11th Cir. 2016) (referring to this presumption as "a strong, not irrebuttable, presumption"). Arbitrators are not entitled to modify contracts. *Id.* Here, the Court must look to the plain language of the Channel Transition Agreement, which contains no such deadline. Rather than interpret the parties' agreements, the Panel grafted in an arbitrary 30-day timeline to transition H-E-B distribution that neither party contemplated nor bargained for in the agreements. Thus, the Panel's decision was an imperfect execution of its powers.

**B.      The Panel refused to execute its power to determine that PepsiCo had not met its burden of proving that MIXX could be a** ████████

The Panel indisputably refused to determine that PepsiCo failed to meet its burden on the MIXX issue. Prior to the Phase 1 hearing, the Panel ruled that: "The Phase 1 hearing will result in a final partial award addressing . . . A. Whether the Bang Mixx hard seltzer product is a ████████ ████████████████████████████████████' *Id.* at ¶ 9, Ex. 6. At the hearing, the Parties submitted evidence on this issue, including extensive expert testimony. The Panel did not find that PepsiCo had met its burden. PepsiCo's failure to meet its burden of proof should have resulted in dismissal of the MIXX claim; nevertheless, the Panel failed to dismiss the claim and opted instead to give PepsiCo a second chance to prove its claim. The Panel did not suggest, nor could it, that the Parties contracted to give PepsiCo a second chance to meet its burden of proof. Nothing in the Agreement gives PepsiCo multiple chances to meet its burden of proof in any dispute.

PepsiCo and the Appellate Tribunal claim the Panel had the discretion to give PepsiCo a second chance to prove its claim, referring to this decision as a scheduling issue. But even if that were true, then the Final Partial Award is necessarily non-final and cannot be confirmed. Assuming, for the purposes of argument, that the Final Partial Award is final, however, the Panel's non-decision on MIXX was a refusal to execute its power.

The Panel's decision to defer a dismissal of PepsiCo's MIXX claim is prejudicial to VPX and its affiliates. For example, PepsiCo's unlawful assertion of rights to MIXX has had a chilling effect on VPX affiliate, Quash Seltzer, LLC's ability to build a distribution network for MIXX. *See, e.g.*, *Quash Seltzer, LLC v. PepsiCo, Inc.*, No. 21-CV-60191-RAR (S.D. Fla.), Dkt. 9 at ¶¶23–30.  And, while PepsiCo tried, and failed, to meet its burden to prove that MIXX was a Licensed Product, even through the time of the hearing, PepsiCo was not licensed and able to distribute alcoholic beverages throughout the United States. Foster Decl., ¶ 22, Ex. 15 at p. 1585, 1596. Thus,

if MIXX was a Licensed Product, then PepsiCo has materially breached the Agreement under which the Panel has ordered VPX to specifically perform. *See* Foster Decl. Ex. 2 at § 2.2(a).

### C. The Panel dispensed its own brand of justice by refusing to require mutual specific performance, if it was going to order specific performance at all.

The Panel dispensed its own brand of industrial justice when, in the very same decision holding PepsiCo could seek monetary damages for breach of contract, it required VPX, and only VPX, to specifically perform under the contract. The Panel ruled that PepsiCo would be unable to quantify the value of future breaches of the Agreement. Dkt. 1-1, p. 61. But there was no evidence that PepsiCo would be unable to quantify those damages. Just as concerning, by refusing to require PepsiCo to specifically perform—that is, continue to distribute BANG and live up to its obligations under the Agreement—the Panel crafted an inequitable equitable remedy.

The Panel awarded PepsiCo specific performance while also granting PepsiCo the ability to seek monetary damages for the same alleged breaches. *Id.* Right now, PepsiCo is preparing an expert to testify as to the exact amount of its alleged damages for breach of contract for the Phase 2 hearing. *See* Foster Decl. ¶ 23, Order 21 (ordering that the Phase 2 hearing will include "All claims by PepsiCo for damages" (issued the day before the Supplemental Disclosure)). The Panel specifically acknowledged that irreparable harm is a condition for an award of specific performance. Dkt. 1-1, p. 61. Nevertheless, it dispensed its own brand of industrial justice by both authorizing PepsiCo to pursue damages, while also granting specific performance.

Moreover, by making specific performance only applicable to VPX, the Panel disregarded the fundamental requirement that the party receiving a grant of specific performance also perform its obligations. *Nemer Jeep–Eagle, Inc. v. Jeep-Eagle Sales Corp.,* 992 F.2d 430, 433 (2d Cir. 1993). Such an unbalanced requirement, reflecting the Panel's own brand of industrial justice, has enabled PepsiCo's efforts to undermine VPX. ███████████████████████

19

██████████████████████████████████████████████████████

████████████████████████████████████████ Foster Decl., ¶ 21, Ex. 14

at R-393. VPX presented testimony and exhibits of PepsiCo's execution of plans to undermine

Bang sales. *See id.* at R-123, p. 34 ████████████████████████████████████

████████████████████████████████

These concerns are not just theoretical. Just recently, for example, VPX learned that

PepsiCo is not delivering certain varieties of Bang to the thousands of stores of a key customer, a

chain that sets the bar which others in the industry follow. Declaration of J. Nickell; Foster Decl.,

¶ 22, Ex. 15 at Tr. 2604-06. Despite orders and available shelf space and the fact that PepsiCo has

these varieties in stock, PepsiCo has failed to distribute over 160,000 cases of product. Under the

Final Partial Award, PepsiCo is not required to specifically perform its obligations and VPX is not

allowed to get this key customer product it has ordered. And, the Final Partial Award provides no

recourse to VPX.

## CONCLUSION

For the foregoing reasons, the Court should: (1) deny PepsiCo's petition to confirm the

Final Partial Award; (2) grant VPX's motion to vacate the Final Partial Award; (3) direct the

Parties to appoint new arbitrators, who will then select a third; and (4) direct the Parties to begin

the arbitral proceedings anew.

Dated: May 12, 2022.

/s/ *Zachary Foster*
Zachary S. Foster, Esq.
Florida Bar No. 111980
QUARLES & BRADY LLP
101 East Kennedy Boulevard, Suite 3400
Tampa, FL 33602
Telephone: (813) 387-0300
Fax: (813) 387-1800
zachary.foster@quarles.com

*Attorneys for Respondent Vital Pharmaceuticals, Inc., d/b/a Bang Energy*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically using the CM/ECF system, on May 12, 2022, the following counsel or parties of record:

Edward Soto (FBN 265144)
Edward.soto@weil.com
Brian Liegel (FBN 119269)
Brian.liegel@weil.com
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Ave., Suite 1200
Miami, FL 33131
(305) 577-3100 (T)

Andrew S. Tulumello
Drew.tulumello@weil.com
Chantale Fiebig
Chantale.fiebig@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street N.W.
Washington, D.C. 20036
(202) 682-7000 (T)

Geoffrey M. Sigler
gsigler@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.
Washington, D.C. 22036
(202) 955-8500 (T)

/s/ *Zachary Foster*
Zachary S. Foster, Esq.